UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Chairut Siriwat, | ) C/A No. 4:08-00432-RBH-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| | ) |
| South Carolina Department of Correc[tions]; Kathy Hudson; Marsha Sellers; Thomas Byrne; Capt Grimes; Capt McKendly Newton; Capt Joseph Deloach; Sgt. Teresa Ramsey; I/M Jesus Gonzales; Assoc. Warden John Pate; and Warden George T. Hagan, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## I. PROCEDURAL HISTORY

The *pro se* plaintiff filed this action in the Court of Common Pleas for Richland County. Defendants filed a Notice of Removal to federal court on February 7, 2008.[1] Plaintiff alleges that his constitutional rights were violated while incarcerated at the Allendale Correctional Institution ("ACI"). Defendants filed a motion for summary judgment on July 28, 2008. The undersigned issued an order filed July 29, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising plaintiff of the motion for summary judgment procedure and the possible consequences if

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

1

he failed to respond adequately. Plaintiff filed both a motion for extension of time to file a response and a response on September 4, 2008.

The motion for extension was granted and an Order of Extension was mailed to the plaintiff on September 23, 2008. This Order was returned *via* United States Postal Service to the Court on October 9, 2008. (Doc. #30). An Order was entered in this matter on February 19, 2008, ordering the plaintiff to always keep the Clerk of Court advised in writing if his address changed for any reason. (Doc. # 7).[2] Therefore, this court issued an Order on January 22, 2009, ordering plaintiff to inform the court within ten (10) days from the date of this order if he wished to proceed with this case. Plaintiff was instructed that if he did not respond to said Order within ten (10) days, his case may be dismissed for failure to prosecute under Rule 41b of the Federal Rules of Civil Procedure. This Order was returned to the Clerk of Court's office *via* the United States Postal Service marked "Return to Sender" and "I/m released." Plaintiff has not filed a change of address with the court since being released. (Doc. #33).

### A. RULE 41(B) DISMISSAL

A complaint may be dismissed pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court. Ballard v. Carlson, 882 F.2d 93 (4th Cir. 1989), cert. denied 493 U.S. 1084 (1990) and Chandler Leasing Corp. v. Lopez, 669 F.2d 919 (4th Cir. 1982). In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors:

(1)   the degree of plaintiff's responsibility in failing to respond;

---

[2] There have been no filings in this case by the plaintiff since September 4, 2008.

2

(2) the amount of prejudice to the defendant;

(3) the history of the plaintiff in proceeding in a dilatory manner; and,

(4) the existence of less drastic sanctions other than dismissal.

Davis v. Williams, 588 F.2d 69 (4th Cir. 1978).

In the present case, the plaintiff is proceeding pro se so he is entirely responsible for his actions. It is solely through plaintiff's neglect, and not that of an attorney, that he has failed to comply with the orders of this court. The Order of January 22, 2009, ordering plaintiff to inform the court if he wished to proceed with his case since the last mailing was returned undeliverable. The Order was returned to the Clerk of Court and marked that plaintiff had been released. Plaintiff has not provided the court with an updated address as required by the Order of February 19, 2008. The undersigned concludes the plaintiff has abandoned his lawsuit as to these defendants. Accordingly, it is recommended that this action be dismissed pursuant to Fed. R. Civ. Proc. 41(b) with prejudice.

In the alternative, the undersigned will briefly address the merits and defendants' motion for summary judgment.

## II. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND CONTEMPT

On June 11, 2008, plaintiff filed a motion entitled "Plaintiff Default Judgment Motion and Contempt of Court Motion." (Doc. # 16). In this motion, plaintiff asserts that defendants failed to comply with the court's scheduling order of March 3, 2008. Specifically, plaintiff argues as follows:

> order[ed] the Defendant to respond and produce requested Discovery Material by May 7, 2008, and by this Order dated March 3, 3008, the Defendant have exceeded said designated date and have therefore forfeited their rights to submit discovery material, and are therefore in contempt of said Court Order, and the Plaintiff Default Judgment

3

>     motion should be granted and honored by this Court due to the
>     Defendant failure to comply with Court Order dated March 3, 2008,
>     and SCRCP."

(Doc. #16).

Plaintiff does not assert that he served any discovery requests on the defendants and appears to believe that the scheduling order meant that defendants should automatically provide plaintiff with discovery information before the deadline. Therefore, this motion is not proper. However, if plaintiff is asserting that defendants failed to respond to discovery requests that he sent to defendants, plaintiff has failed to attach copies of such requests. Accordingly, plaintiff's motion (doc.#16) should be DENIED.

### III.  DISCUSSION

#### A.  PLAINTIFF'S FACTUAL ALLEGATIONS

In his complaint, plaintiff alleges that he was assigned to minimum custody at the ACI and held in the general population but was ordered to move to medium custody on October 27, 2005, without explanation.[3] Plaintiff asserts that he requested to be placed in the administrative segregation unit in protective custody but the request was denied by Captain Newton. Plaintiff states that he was then placed in the holding cell in the administration building. (Complaint p.4, ¶ 18-21). Plaintiff asserts that he was released from the holding cell and then moved to a different unit. However, plaintiff states he was moved back to another room, Unit F-4, Room A-3, on November 3, 2005,

---

[3] There is no liberty interest created in custodial classifications. Meachum v. Fano, 427 U.S. 215, 225 (1976).

with cell-mate Anthony Massey. Plaintiff argus that Jesus Gonzales[4] was moved from administrative segregation to Unit F-4, Room A-21.

On December 2, 2005, plaintiff contends that Corporal Sellers was assigned to Unit F-4, A-Wing and entered the wing around 10:45 a.m. Plaintiff asserts that "without provocation inmate Gonzales was persuing[sic] the Plaintiff in an aggressive manner. Observing this, she then escorted both Jesus Gonzales and plaintiff to go to the holding cell, without any escort." (Complaint ¶ 23-25). Plaintiff contends that "on the way to the holding cell, in the unit sallyport, inmate Gonzales pursued plaintiff again, assaulted and severely beat the plaintiff." (Complaint ¶26). Plaintiff contends that Corporal Sellers came into the sallyport after hearing the "commotion" and began yelling for inmate Gonzales to stop beating the plaintiff but did not call for any backup until after plaintiff was unconscious. Plaintiff asserts that Corporal Sellers withdrew her chemical munitions but refused to discharge it requesting that other inmates attempt to get inmate Gonzales to stop beating the plaintiff. Plaintiff contends that dorm Lieutenant Kersey came out of his office, tackled Gonzales, and, thereby, saved plaintiff's life. (Complaint ¶27). Plaintiff states that he was unconscious and awoke in the infirmary where he received medical attention and was released back to the unit after being observed for about five hours. (Complaint ¶28). Plaintiff alleges that his right eye was swollen shut, his forehead and head had several bruises, and his nose continued to bleed causing him severe pain and discomfort. After complaining of pain, plaintiff alleges he was taken back to medical that night and given pain medication and then to the supervisor's officer where he signed a request for protective custody with Captain Grimes. Plaintiff states that after being placed in a holding cell for

---

[4] It is noted that this name has been spelled both Gonzales and Gonzalez. For purposes of this Report and Recommendation, it will be spelled as in the caption, Gonzales.

two nights, he was sent back to his unit. Plaintiff contends that he was taken to the SCDC infirmary at Kirkland Correctional Institution in Columbia where he received x-rays and diagnosed with a nasal bone fracture. On December 21, 2005, plaintiff alleges that his cell-mate accused him of snitching on him and threatened to kill plaintiff if he was seen talking to any officers. On December 22, 2005, plaintiff asserts that he requested protective custody and was told to either move to medium security or return to his cell. Plaintiff stayed in the holding cell until December 26, 2005, when he was placed in another living unit. (Complaint). Plaintiff alleges that he was taken to "Sumter Head and Neck Center" on January 4, 2006, for examination of his face and head injuries, and it was determined that his fractured nose "mended without correcting its alignment."[5] He states that he was also seen on January 5, 2006, for an eye test at ACI. (Complaint ¶40).

Plaintiff states that he remained at ACI without further incident and Jesus Gonzales was taken to administrative segregation charged with striking plaintiff. Plaintiff asserts that Gonzales was released back into general population after 60 days and "would mock plaintiff by calling him 'Chi-chi." (Complaint ¶43). Plaintiff also alleged that while he was in the ACI medical department, Corporal Sellers was negligent in allowing other inmates to pack his personal belongings and property in a duffel bag and, that upon his inventory of the duffle bag, he was missing "a lamp, microwave bowl, Walkman radio, and an alarm clock."[6]

---

[5] The medical records provided has a notation that plaintiff was sent to Sumter for an ENT consult on January 4, 2006. (See medical records submitted with defendants' memorandum, Doc. #21-6.) However, the undersigned does not see any notation or record stating that plaintiff's nose had "mended without correcting its alignment."

[6] The Supreme Court has held that deprivations of personal property, including negligent deprivations of personal property, do not support an action for damages under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-336 & n. 3 (1986). Moreover, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. In other words, "[t]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 200-203 (1989).

Plaintiff requests monetary compensation in the amount of $1,000,000.00. (Complaint p. 9).

### B.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case,

on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. DELIBERATE INDIFFERENCE TO A RISK OF HARM

Plaintiff has alleged that defendants were negligent and indifferent to his safety by instructing he and inmate Gonzales to go to the holding cell without any escort when Gonzales attacked him.

Defendants submitted several affidavits along with the motion for summary judgment. Defendants assert that upon arrival at ACI, classification Manager Kathy Hudson reviewed plaintiff's record pursuant to SCDC Guidelines, completed a "Cell Assignment Form" finding no restrictions, and gave plaintiff his residence assignment. (Hudson affidavit). Late in the morning of December 2, 2005, defendant Sellers, then corporal supervisor assigned to Unit F-4, observed plaintiff and Gonzales "horse playing." (Sellers' affidavit and Pate Affidavit). Because horse playing is not allowed, Sellers stopped them immediately and prepared to have the inmates exit the housing unit individually so Yard 1 could escort them to the holding cell in the administrative building. Sellers attests that he radioed Yard 1 to expect inmate Gonzales and then sent him outside the building toward Yard 1 while he and plaintiff stayed in the covered area at the doorway. (Sellers' affidavit). Before he could radio Yard 1 to arrange plaintiff to come to their location, inmate Gonzales "quickly turned, ran back toward Siriwat and pushed him to the ground." (Seller's' affidavit, p. 2). Sellers

8

attests that prior to this time he had no reason to suspect bad feelings or any other problem between Siriwat and Gonzalez. (Sellers' affidavit, ¶9). Sellers ordered Gonzales to move away from plaintiff but he refused and began kicking the plaintiff. Sellers attests that knowing the Unit Lieutenant was nearby, he yelled for help. Lieutenant Kearse arrived before he could radio for back-up or administer chemical munitions. Lieutenant Kearse separated Gonzales from plaintiff and plaintiff was immediately taken to medical. (Sellers' affidavit ¶10-14). Sellers attests that prior to this incident on December 2, 2005, plaintiff never complained of his cell assignment or cell-mates and Gonzales did not indicate that he disliked plaintiff or wanted to assault him. (Sellers' affidavit).

Associate Warden Pate attests that Sellers followed proper procedure by removing plaintiff and inmate Gonzales from the housing unit and escorting them to the holding cell. As a result of the incident, inmate Gonzales was convicted of "striking another inmate," and placed in lock-up until February 6, 2006. (Pate affidavit).

The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials. The Supreme Court stated this principle and established the appropriate standard in Whitley v. Albers, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . . Id., at 1084.

Based on these precedents the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." Ruefly v. Landon, 825

9

F.2d 792 (4th Cir. 1987). The Supreme Court has recently defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825 (1994).

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer, supra. The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. (Emphasis added). This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly. Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with

deliberate indifference to that specific or pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.), cert. denied, 502 U.S. 828 (1991).

The undersigned concludes that the plaintiff has failed to prove that the prison officials wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm. There is no indication that plaintiff and inmate Gonzales had ever had problems or disliked each other before the date of the incident. Defendant Sellers immediately stopped them from what she referred to as "horse play." Even if it was not horse play as plaintiff asserts, Sellers did in fact separate them and was sending them to the holding cell when the incident occurred. Plaintiff has not shown that defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that defendants drew the inference. Farmer, supra; Rich v. Bruce, 129 F.3d 336 (4th Cir. 1997)("A defendant is not subjectively reckless where, although he is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").

Assuming defendants' actions were indicative of negligence, a showing of mere negligence will not meet the deliberate indifference standard. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Therefore, as plaintiff has attempted to allege gross negligence on the part of the defendants in their conduct, this claim fails. Neither the Fourteenth Amendment Due Process Clause, Davidson v. Cannon, 474 U.S. 344, 347 (1986), nor Eighth Amendment, Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) is violated by negligent failure to protect inmates from violence. Thus, the undersigned recommends that this claim be dismissed and summary judgment granted in favor of the defendants.

## D. MEDICAL INDIFFERENCE

In his complaint, plaintiff has made allegations that defendants were "negligent and grossly negligent for failing to promptly and appropriately treat plaintiff's injuries following the December 2, 2005, attack by inmate Jesus Gonzales. This was a proximate cause of plaintiff's prolonged pain and suffering and permanent disfigurement of his nose." (Complaint p. 8).

Defendants respond that plaintiff's medical records prove that the SCDC and its officers were not deliberately indifferent to his serious medical needs.

Based on a review of plaintiff's own pleadings and the evidence submitted, the undersigned finds that the plaintiff fails to show that defendants were deliberately indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention'

or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff

were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

The plaintiff has failed to show that he was denied medical treatment. Plaintiff was seen in medical immediately following the altercation, and Dr. Byrne supervised the treatment. As plaintiff stated in his complaint, he was observed for several hours before being returned to his unit. (See Complaint ¶28). Plaintiff was seen by medical again on the same date, on the next day, and on several other occasions after complaining of pain. Plaintiff was transported upon Dr. Byrne's approval to Kirkland Correctional Institution for diagnostic tests consisting of x-rays of the nasal bones and orbits. Based on the medical records, he saw medical on approximately ten occasions. Plaintiff was also seen for an ENT consult at the Sumter Correctional Institution. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not shown that any conduct by these defendants "shocks the conscious" as required by Miltier v. Beorn, supra.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v. Sheffer, supra.

Thus, although plaintiff did not agree with the type of treatment or the timing of treatment he received, the fact is plaintiff was provided treatment. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983.  Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.

Additionally, any claims of medical indifference as to defendants should be dismissed as they are not medical personnel and plaintiff has not shown that they interfered with his medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct.   Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990).  Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment.  *Id.*  Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Therefore, any claims against the defendants for medical indifference fails.

## E.  QUALIFIED IMMUNITY

Defendants argue that they are all entitled to qualified immunity. Defendants assert plaintiff cannot establish that any defendant violated a constitutional right.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. As stated above, defendants have not violated plaintiff's clearly established rights. Also, assuming, *arguendo*, a right has been violated, the undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## F.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### IV.  CONCLUSION

As set out above, a review of the record indicates that the plaintiff's complaint should be dismissed for failure to prosecute. It is, therefore,

RECOMMENDED that plaintiff's complaint be dismissed for failure to prosecute and comply with Court Orders with prejudice pursuant to Fed. R. Civ. Proc. 41(b).

In the alternative, plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (doc. #21) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT

Respectfully submitted,

s/Thomas E Rogers, III

Thomas E. Rogers, III
United States Magistrate Judge

February 6, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**